IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MILNE, et al.,<br><br>Plaintiffs,<br><br><br>vs.<br><br><br>USA CYCLING INC., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:05-CV-675 TS |

This matter is before the Court on the Motion for Summary Judgment[1] and Motion to Strike the Second Affidavit, Expert Report, and Deposition Testimony of Sean Collinsworth[2] by Defendants USA Cycling, Inc. (d.b.a. NORBA), Cycle Cyndicate, Inc., and Eric Jean ("Race Defendants" or "Defendants").[3]

---

[1]Docket No. 45.

[2]Docket No. 62.

[3]The Court notes that Defendant Konitshek has filed both a Response to the Race Defendants' Motion (Docket No. 50), and an Opposition to Defendants Motion to Strike Affidavit (Docket No. 73). The filing of these motions is entirely appropriate where, as here, Konitshek has filed a cross-claim against the Race Defendants. *See Nat. Serv. Indus., Inc. v. B.W. Norton Mfg. Co. Inc*., 937 P.2d 551, 556 n.2 (Utah Ct. App. 1997). However, in Docket No. 50, Defendant generally requests that, should any part of the case go to trial, Race Defendants be included on a jury special verdict form for apportionment of fault under Utah Code Ann. § 78-27-37, *et seq*. This procedure would normally be followed as a matter of course.

## I.  INTRODUCTION

The facts in this matter are more fully set forth by the parties in the pleadings and memoranda.  In short, this action stems from injuries sustained by Plaintiff Robert Milne, and fatal injuries sustained by Ben Hall, represented by Plaintiff Timothy Sorrow, participants in the 2004 Tour of Canyonlands ("TOC") mountain bike race, near Moab, Utah, as a result of a collision with a truck/trailer driven by Defendant Konitshek.  Race Defendants organized, promoted, and conducted the race.  Plaintiffs bring the following claims: (1) Negligence - Tim Konitshek, (2) Negligence - Eric Jean, (3) Gross Negligence - Eric Jean, (4) Negligence - Cycle Cyndicate, (5) Gross Negligence - Cycle Cyndicate, (6) Negligence - NORBA, (7) Gross Negligence - NORBA, and (8) Wrongful Death (by Timothy Sorrow, on behalf of Mr. Hall) - NORBA, Cycle Cyndicate, Eric Jean, and Tim Konitshek.

The TOC is an "open-course" race, meaning that racers share the course with regular vehicle traffic.  Plaintiffs have stipulated that Mr. Hall and Mr. Milne knowingly and voluntarily executed a release agreement wherein they agreed to waive any and all claims, including those arising from Race Defendants' own negligence, and release Defendants from all liability for injuries or death suffered while competing in the TOC race.[4]

The undisputed facts further show that Race Defendants put up a sign before the race for the purpose of advising passersby of the event.  Also, marshals and parking attendants were present at the start location of the race.  Moreover, Dan Thomas, a race official for Race

_Nat. Serv. Indus._, 937 P.2d at 556 n.2.  As to the other issues relevant to the current motions, Defendant Konitshek's arguments are either duplicative or inapposite to the determinations that this Court must make.  Accordingly, the Court's reasoning, as set forth below, applies to all Defendants.

[4]Docket No. 39.

Defendants, warned all race participants at the starting line, as they were released, to use caution because the course was open and because traffic would be encountered.  Finally, Race Defendants placed at least one person on the course, Defendant Jean, for the purpose of traffic control during the race.  Defendant Jean patrolled the area during the race and at least three individuals who were camping in the area testified that Defendant Jean warned them of the race as it was taking place.

## II.  DISCUSSION

### A.  Defendants' Motion to Strike

Defendants move to strike the second affidavit of Plaintiffs' expert Sean Collinsworth,[5] upon the grounds that portions of it contain impermissible legal conclusions, attempt to create a sham fact issue, and are unreliable under *Daubert*.[6]  Plaintiffs oppose Defendants' Motion in all respects.

The Court finds that the affidavit in question is largely irrelevant to the Court's evaluation of the issues in question.  Nevertheless, the Court will grant Defendants' Motion to Strike.  Specifically, the Court determines that: partly by his own admission in deposition, Mr. Collinsworth is not sufficiently qualified to render expert testimony on the applicable standards of care for mountain bike racing, particularly regarding the TOC; that any such testimony would be speculative and not sufficiently reliable as per the factors set forth by *Daubert v. Merrel Dow Pharmaceuticals, Inc.*[7]; and that, therefore, the testimony would not be useful to a jury under Fed. R. Evid. 702.

---

[5]Docket No. 55, Ex. M or 16.

[6]509 U.S. 579 (1993).

[7]*Id.*

*B.  Defendants' Motion for Summary Judgment*

   1.  The Summary Judgment Standard

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[8]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[9]

    2.  Negligence Causes of Action

      i.  Negligence

Defendants argue that the release agreement bars Plaintiffs' claims of negligence. Plaintiffs do not dispute Defendants' assertion.

Under Utah law, a party may obtain contractual releases from liability for negligent action where a party agrees to release the other from liability for future injuries.[10]  Such contracts need only show a clear and unequivocal expression of an intent to release.[11]  As mentioned above, Plaintiffs have stipulated that Mr. Hall and Mr. Milne knowingly and voluntarily executed a release agreement wherein they agreed to waive any and all claims, including those arising from Race Defendants' own negligence, and release Defendants from all liability for injuries or death suffered while competing in the TOC race.[12]  The Court finds the release to show a clear

---

[8]Fed. R. Civ. P. 56(c).

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[10]*Hawkins ex rel. Hawkins v. Peart*, 37 P.3d 1062, 1064 (Utah 2001).

[11]*Id.*

[12]Docket No. 39.

and unequivocal expression of an intent to release.  There being no genuine issues of material fact, the Court finds that Race Defendants are entitled to judgment as a matter of law on Plaintiffs' negligence claims.

> ii.  Gross Negligence

Defendants argue that the release agreement bars Plaintiffs' claims of gross negligence. Plaintiffs dispute Defendants position.  Defendants further argue that even if the release does not bar Plaintiffs' claims, Plaintiffs' claims must fail because there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law because the facts pleaded by Plaintiffs do not show gross negligence.

> a.  Effect of Release on Gross Negligence Claims

In a diversity action like this one, where state law controls, "'we must apply the most recent statement of state law by the state's highest court.'"[13]  The Utah Supreme Court has not directly held that releases are invalid with respect to claims of gross negligence.  However, "our job is to predict how that court would rule," and state supreme court "dicta, which represents that court's own comment on the development of [the] law, is an appropriate source from which this prediction may be made."[14]  The Utah Supreme Court has repeated, in dicta, that releases are invalid against claims of gross negligence:

---

[13]*Cooper v. Cent. & Sw. Serv.*, 271 F.3d 1247, 1251 (10th Cir. 2001) (quoting *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994)).

[14]*Carl v. City of Overland Park, Kansas*, 65 F.3d 866, 872 (10th Cir. 1995).

5

[T]hose who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in the performance of a contractual duty; but such an exemption is always invalid if it applies to harm wilfully inflicted or caused by gross or wanton negligence.[15]

Accordingly, the Court finds that the releases, in and of themselves, do not preclude Plaintiffs' claims for gross negligence.

b.  Substance of Gross Negligence Claims

Defendants argue that the undisputed facts are sufficient to demonstrate that they were not grossly negligent.  The parties also generally dispute whether the determination of gross negligence in this case is properly one for the jury.

"Terms such as . . . gross negligence . . . fall on that line of culpability somewhere between simple negligence and clearly intentional conduct and involve elements of both."[16] Gross negligence may be characterized as "a gross deviation from the standard of care that an ordinary person would exercise in the given circumstances."[17]  "'Gross negligence is the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'"[18]

The Court will grant summary judgment for Defendants.  While, as a practical matter, granting summary judgment on the issues of negligence or gross negligence is generally

---

[15]*Hawkins*, 37 P.3d at 1065 (quotation omitted); *see also Russ v. Woodside Homes, Inc.*, 905 P.2d 901, 904 (Utah Ct. App. 1995) (same).

[16]*Strange v. Ostlund*, 594 P.2d 877, 881 (Utah 1979).

[17]*Utah State Tax Comm'n v. Stevenson*, 2006 UT 84, ¶ 29, 150 P.3d 521 (quotation and citation omitted).

[18]*Moon Lake Elec. Ass'n, Inc. v. Utrasystems Western Constructors, Inc.*, 767 P.2d 125 (Utah Ct. App. 1988) (quoting *Atkin v. Wright & Miles Mountain States Tel. & Tel Co.*, 709 P.2d 330, 335 (Utah 1985)).

disfavored due to the unique role of the jury in these types of cases,[19] to carry a claim of gross negligence, Plaintiffs here are required to show conduct that not only demonstrates "an unreasonable risk of physical harm to another" but also that "such risk is *substantially greater than that which is necessary to make his conduct negligent.*"[20]  Indeed, as mentioned above, Utah's formulation of gross negligence necessarily requires *the absence of even slight care.*[21]

Even accepting Plaintiffs' version of the facts, the undisputed facts preclude a showing of conduct by the Race Defendants indicative of a risk substantially greater than that which would be negligent.  Defendants placed a sign on the course before the race to advise passersby of the event.  Defendant Jean notified at least three potential motorists in the area of the race, and thereby conducted minimal traffic control, even if the manner in which he did so could be characterized as deficient, and therefore, negligent.  Defendants also warned the race participants both orally and in writing of the dangers posed by vehicle traffic on the course.  More specifically, Race Defendants first warned Plaintiff Milne and Hall of the inherent dangers of the race, including collision with vehicular traffic, in the release which they signed.  Plaintiff Milne and Hall were warned again by Dan Thomas at the starting line, who, according to the undisputed facts, warned all race participants to use caution because the course was open and because traffic would be encountered.  Finally, Defendants placed marshals and parking attendants at the start location of the race, presumably for purposes of traffic control.

---

[19]*E.g.*, 10A Wright and Miller, *Federal Practice and Procedure* § 2729; V. Woerner, Annotation, *Propriety of Granting Summary Judgment in Case Involving Issue of Gross or Wanton Negligence*, 50 A.L.R. 2d 1309.

[20]Restatement (Second) of Torts § 500 (1965) (emphasis added).

[21]Because the second affidavit of Sean Collinsworth does not account for or address this standard, the Court does not consider it sufficiently relevant in addressing the issue of gross negligence here.

The Court cannot find from the facts set forth in the memoranda or accompanying affidavits—either those which are undisputed, or those which are disputed, viewing them in the light most favorable to Plaintiffs—that a reasonable jury could conclude that Defendants did not exercise even slight care.  Accordingly, the Court will grant Race Defendants' Motion as it relates to Plaintiffs' claims of gross negligence.

### 3. Wrongful Death Claims

Defendants argue that the release agreement bars the wrongful death claim of Plaintiff Sorrow.  Defendants cite to the 1997 Utah Supreme court case of *Hirpa v. IHC Hospitals, Inc.*,[22] for the proposition that "Utah law is clear that a plaintiff in a wrongful death action is subject to defenses which could have been asserted against the decedent had he lived and prosecuted the suit."[23]

Plaintiff Sorrow disputes that a wrongful death action is subject to such defenses, and cites *Hull v. Silver*,[24] a 1978 Utah Supreme Court decision which held that a wrongful death action is not subject to the defense of interspousal tort immunity.[25]

The Court finds that the most recent pronouncements of the Utah Supreme Court support that the Race Defendants are entitled to judgment as a matter of law.  It is clear that the Utah Supreme Court has held that a wrongful death action is not subject to a defense of interspousal immunity,[26] and has appeared, on occasion in the past and through dicta, to leave room for

---

[22]948 P.2d 785 (Utah 1997).

[23]*Id.* at 794.

[24]577 P.2d 103 (Utah 1978).

[25]*Id.* at 104.

[26]*Hull*, 577 P.2d at 106.

rejection of more defenses, including waiver by release.  For example, in *Hull* the Utah Supreme

Court, in reaching its decision to reject interspousal immunity, noted that, unlike the Plaintiff in

the 1947 Tenth Circuit case of *Francis v. Southern Pacific Co.*,[27] a plaintiff bringing a wrongful

death claim could recover under Utah law even though the decedent had waived his right to bring

a claim.[28]  Moreover, in its 1997 decision of *Jensen v. IHC Hospitals, Inc.*,[29] the court accepted a

statute of limitations defense under the Utah Health Care Malpractice Act, but noted that a

"wrongful death cause of action . . . may only proceed subject to *at least some* of the defenses

that would have been available against the decedent had she lived to maintain her own action."[30]

    Despite this, the Court finds several reasons for adopting Defendants' position.  The

Court notes that the Utah Supreme Court has not explicitly rejected any defense besides

interspousal immunity.  To the contrary, the Court has accepted the defense of comparative

negligence in the *Kelson v. Salt Lake County* case,[31] and defenses under Utah's Good Samaritan[32]

and Health Care Malpractice Acts[33] in the *Hirpa* and *Jensen* cases, respectively.  In fact, the most

recent pronouncements by the court are indicative of a much broader acceptance of defenses

---

[27]162 F.2d 813, 816 (10th Cir. 1947) (holding recovery via Utah wrongful death action
barred by release).

[28]*Hull*, 577 P.2d at 106 (noting that *Francis* was pre-*Erie*, and implying Tenth Circuit's
decision would not have reached conclusion it did otherwise).

[29]944 P.2d 327, 332 (Utah 1997).

[30]*Id.* at 332 (emphasis added).

[31]784 P.2d 1152, 1155 (Utah 1989).

[32]948 P.2d at 794.

[33]944 P.2d at 332

which would have been available to a defendant had the decedent brought suit.[34]  Notably, the

court has not deemed it necessary to set forth a framework for evaluating or distinguishing

defenses, or indicated that any analysis need be conducted when the issue of applying a defense

in this context is presented.[35]  Accordingly, the Court, finds that the current state of the law is

that "[A] plaintiff in a wrongful death action is subject to [all] defenses [except interspousal

immunity] which could have been asserted against the decedent had he lived and prosecuted the

suit."[36]  Under this rule, Plaintiff's wrongful death claims here would be barred.

Even if the Utah Supreme Court would not state the rule so broadly, the Court predicts

that the Court would specifically accept the defense of waiver of liability through release.

Significantly, "while an action for wrongful death is an independent action accruing in the heirs

of the deceased[, it] is based on the underlying wrong done to the decedent."[37]  Here, because the

decedent released Defendants of liability as to negligence claims, and because, as a matter of

law, Defendants' conduct cannot be characterized as grossly negligent, no legally identifiable

wrong was done to him.[38]  Accordingly, this Court finds that Race Defendants are entitled to

judgment as a matter of law on Plaintiff's wrongful death claims.

---

[34]*See, e.g.*, *Hirpa*, 948 P.2d at 794 ("[D]efense can be asserted against a malpractice claim by a living plaintiff. . . . [;]same defense should be allowable in a wrongful death action by the deceased patient's heirs.").

[35]Indeed, the recent pronouncements of the court appear to indicate that no specific analysis need be made.  *See, e.g.*, *Hirpa*, 948 P.2d at 794 ("[D]efense can be asserted against a malpractice claim by a living plaintiff. . . . [;]same defense should be allowable in a wrongful death action by the deceased patient's heirs.").

[36]*Id.*

[37]*Jensen*, 944 P.2d at 332.

[38]*Accord Russ*, 905 P.2d at 905-06 (holding that release barred wrongful death claim).

III.  CONCLUSION

For the foregoing reasons, it is therefore

ORDERED that Defendants' Motion to Strike (Docket No. 62) is GRANTED.  It is further

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 45) is GRANTED.  It is further

ORDERED that judgment shall be entered in favor of Race Defendants and against Plaintiffs on all claims.

SO ORDERED.

DATED   June 11, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

11